[Cite as *State v. Ferguson*, 2026-Ohio-2662.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-P-0056 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| STEVEN M. FERGUSON, | Trial Court No. 2024 CR 00656 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: July 13, 2026
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Vincent V. Vigluicci*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Paul M. Grant*, Law Office of Paul M. Grant, 209 South Main Street, Eighth Floor, Suite 3, Akron, OH 44308 (For Defendant-Appellant).

SCOTT LYNCH, J.

{¶1} Defendant-appellant, Steven M. Ferguson, appeals his convictions and sentence for Rape, Gross Sexual Imposition, and Sexual Battery in the Portage County Court of Common Pleas. For the following reasons, we affirm the judgment of the lower court.

{¶2} On August 8, 2024, Ferguson was indicted by the Portage County Grand Jury for Rape, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b); Sexual Battery, a felony of the second degree, in violation of R.C. 2907.03(A)(5); Gross Sexual Imposition, a felony of the third degree, in violation of R.C. 2907.05(A)(4); and three

counts of Domestic Violence, misdemeanors of the first degree, in violation of R.C. 2919.25. A September 26, 2024 Supplemental Indictment charged Ferguson with: two counts of Public Indecency, misdemeanors of the second degree, in violation of R.C. 2907.09; two counts of Gross Sexual Imposition, felonies of the fourth degree, in violation of R.C. 2907.05; Attempted Rape, a felony of the second degree, in violation of R.C. 2907.02 and 2923.02; Endangering Children, a misdemeanor of the first degree, in violation of R.C. 2919.22; Intimidation of a Crime Victim, a misdemeanor of the first degree, in violation of R.C. 2921.04; and 24 counts of Violating a Protective Order, misdemeanors of the first degree, in violation of R.C. 2919.27.

{¶3} A bench trial was held on May 7-8, 2025. The following pertinent testimony and evidence were presented:

{¶4} On August 3, 2024, Patrol Sergeant Shean Boughner of the Portage County Sheriff's Office responded to a domestic violence call involving Ferguson and observed a crowd of "excited and emotional" people in the driveway. Boughner located Ferguson, who had fled on foot, and Ferguson indicated that he had been involved in a fight with his brother and admitted to being the aggressor.

{¶5} Upon returning to the address of the dispatch for further investigation, Boughner noticed N.W., who was 13, appeared to be upset and had been crying. N.W. was at the residence with her mother, Morgan, who is married to Ferguson. N.W. indicated she had been in the bedroom with her mother, Ferguson, and L.F., Morgan and Ferguson's nine-day-old daughter when Ferguson pushed L.F.'s head onto his penis. N.W. said she witnessed the entire event and Ferguson grabbed her neck in an altercation following this incident, as well as punched Morgan in the face.

{¶6} Body camera footage from Boughner showed him questioning Ferguson

about assaulting L.F.  Ferguson variously denied that anything happened but also shook his head in the negative when asked if N.W. and Morgan were lying about the incident with L.F.

{¶7}  Portage Deputy Kayla Douds also arrived at the scene and provided similar testimony regarding the emotional nature of the individuals there.  She confirmed that Ferguson admitted to hitting his brother, Terrence Oscar.  Oscar explained that Ferguson smacked Morgan in the face, he called 911, and Ferguson punched him.  Douds observed that N.W. had a red mark on the back of her neck and Oscar and Morgan had bloody lips.

{¶8}  N.W. testified that she lives with her grandmother and was visiting her mother's house at the time of the offenses.  Ferguson is her stepfather and she had a good relationship with him in the past, although he acted "weird" and mean when using drugs.  She testified that on August 2, 2024, she was aware Ferguson was using drugs. He had been walking around the house in his underwear and exposing himself to people in the house.  He asked his brother to have sex with him.  N.W. also indicated that that night he was "doing weird stuff" like masturbating in front of others in the home.

{¶9}  N.W. testified that on August 2, Fergson began tickling her on her breasts and her thighs and "almost" put his finger "close to my butthole."  This made her feel scared.  She told him to stop and was crying.  Her mother witnessed this and yelled at Ferguson.  N.W. testified that she recalled telling an officer Ferguson had never touched her inappropriately.

{¶10}  The next morning, Ferguson asked N.W. for L.F., who she was holding. She followed Ferguson and her mother, who were arguing, into their bedroom.  Ferguson began feeding L.F. with a bottle while lying on the bed.  N.W. looked away for a second and when she looked back, she saw Ferguson's penis in L.F.'s mouth.  She indicated that

he had his hands on L.F.'s neck and was pushing her head down. His shorts and underwear were partially down. She cursed at him, picked up the bottle, and threw it at the wall. Her mother grabbed L.F. from Ferguson and gave her to N.W. who ran downstairs. After the incident, Ferguson and her mom were hitting each other. He also grabbed N.W.'s neck and tried to punch her, but her mother intervened. N.W. indicated that Ferguson admitted to his conduct and said "[L.F.] wouldn't stop crying and I didn't know what to do."

{¶11} Lauren Nist, a nurse at Akron Children's Hospital, treated L.F. and was made aware that N.W. and her mother had "witnessed inappropriate behavior between the biological dad and the baby." Tabitha Selerowski, a social worker, also testified that she had received a history regarding the incident, which included that Morgan "noticed that dad had his penis out toward the baby's face." Dr. Allison Fox testified that no evidence of injury was observed on L.F. A rape kit was taken but she noted that L.F. had vomited since the incident which can interfere with DNA.

{¶12} Jessica Hoskin, a pediatric nurse practitioner at the Children's Advocacy Center of Portage County, interviewed N.W. who recounted the story of Ferguson touching her chest and buttocks area and the incident with L.F. Hoskin did not perform a physical exam of N.W. since she did not believe it would show signs of abuse.

{¶13} Detective Robert Burris interviewed Ferguson after his arrest. He indicated that Ferguson denied the allegations relating to L.F. but eventually acknowledged that it was a "mistake," he was sorry, and the baby "had latched on for a split second." A review of the video from the interview confirms that Ferguson repeatedly denied the allegations before stating that "she might have latched on for a second" and it was a "possibility" she did so. Burris indicated that, through his investigation, he determined that Ferguson

Case No. 2025-P-0056

exposed himself to several family members at the residence and was seen masturbating over another child's bed while she slept. Burris testified that Ferguson admitted or acknowledged sexual conduct approximately 14 times, such as agreeing that L.F. could have accidentally got his penis in her mouth while he was feeding her.

{¶14} At the conclusion of the State's case, Ferguson entered guilty pleas to five counts of Violation of a Protection Order. The remainder of the protection order counts were dismissed, as well as Public Indecency and Intimidation of a Crime Victim. The court found Ferguson guilty of Rape, Sexual Battery, three counts of Gross Sexual Imposition, three counts of Domestic Violence, and Endangering Children and not guilty of Attempted Rape.

{¶15} The court held a sentencing hearing on July 18, 2025. At the hearing, defense counsel indicated that drug use was a significant factor and requested life with the possibility of parole. The State requested life without parole, emphasizing that Ferguson targeted multiple juvenile victims and had a high risk for recidivism. The court noted the severity of the crimes and sentenced Ferguson to a term of life without parole for Rape, four to six years for Sexual Battery, two years for each count of Gross Sexual Imposition, and 180 days in jail on all misdemeanors, to be served concurrently.

{¶16} Ferguson timely appeals and raises the following assignments of error:

{¶17} "[1.] Mr. Ferguson's convictions are against the manifest weight of the evidence possession (sic) in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article I, Sections 1, 10 & 16 of the Ohio Constitution.

{¶18} "[2.] The trial court erred as a matter of law because the state failed to establish on the record sufficient evidence to support the charges levied against Mr. Fer[g]uson in violation of the due process clause of the 14th Amendment to the U.S.

Case No. 2025-P-0056

Constitution and Article 1, Sections 1, 10, & 16 of the Ohio Constitution.

{¶19} "[3.] The trial court erred as a matter of law by imposing sentence on Mr. Ferguson [which] was contrary to law and in violation of the due process clause of the 14th Amendment to the U.S. Constitution and Article 1, Section 2 of the Ohio Constitution."

**Sufficiency and Manifest Weight of the Evidence**

{¶20} We will consider Ferguson's first and second assignments of error jointly as they raise the interrelated issues of sufficiency and weight of the evidence. In his first assignment of error, Ferguson argues that his convictions were not supported by the weight of the evidence because they relied primarily on the unreliable testimony of N.W. and were unsupported by physical evidence. In his second assignment of error, he argues that there was insufficient evidence of certain elements of the crimes, in particular that there was a lack of evidence to demonstrate that he touched an erogenous zone of another and that he experienced sexual arousal or gratification.

{¶21} The question of whether a conviction is supported by sufficient evidence "is a test of adequacy," which we review de novo. *State v. Thompkins*, 1997-Ohio-52, ¶ 23. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶22} In contrast, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony." (Citation omitted.) *Thompkins* at ¶ 25; *State v. Wilson*, 2007-Ohio-2202, ¶

25 ("a reviewing court asks whose evidence is more persuasive–the state's or the defendant's"). "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at ¶ 25. "The determination that a verdict is not against the manifest weight necessarily includes a finding that the conviction was supported by sufficient evidence." *State v. Clark*, 2025-Ohio-4992, ¶ 30 (11th Dist.).

{¶23} Ferguson was convicted of Rape under R.C. 2907.02(A)(1)(b), which provides: "No person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age." As to Sexual Battery, R.C. 2907.03(A)(5) provides: "No person shall engage in sexual activity with another [or] cause another to engage in sexual activity with the offender" when he is the other person's "natural . . . parent."

{¶24} In relation to Gross Sexual Imposition, R.C. 2907.05(A)(1) and (4) provide: "No person shall have sexual contact with another [or] cause another to have sexual contact with the offender . . . when . . . [t]he offender purposely compels the other person . . . to submit by force or threat of force" or when "[t]he other person . . . is less than thirteen years of age." As charged, force was alleged in relation to N.W. and the age element in relation to L.F.

{¶25} Initially, we observe that while Ferguson's assignments of error generally assert that his "convictions" are unsupported by the evidence, the arguments he presents in his brief relate only to Rape, Sexual Battery, and Gross Sexual Imposition. We will not address whether the convictions for Domestic Violence and Endangering Children are

unsupported by the evidence since Ferguson advances no arguments relating to these convictions. *State v. Lavean*, 2021-Ohio-1456, ¶ 40 (11th Dist.) ("[b]ecause of the limited nature of the argument, we will not formulate arguments regarding Lavean's other convictions for him").

{¶26} In his second assignment of error, Ferguson argues that there is a lack of evidence to demonstrate that sexual conduct or sexual contact occurred in relation to Gross Sexual Imposition and Sexual Battery.

**Evidence of Sexual Conduct and Sexual Contact**

{¶27} A conviction for Gross Sexual Imposition requires proof of sexual contact, which means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Ferguson was convicted of GSI in relation to both L.F. and N.W. As to L.F., N.W. testified that Ferguson caused L.F. to engage in sexual conduct with him by pushing her head onto his genitals. Further, N.W. testified that, while tickling her, Ferguson touched her breasts, thighs, and buttock area. This testimony satisfies the requirements for establishing touching of the erogenous zone of another both in relation to N.W. and L.F.

{¶28} For Sexual Battery, the State was required to prove that Ferguson engaged in "sexual activity," which is defined as sexual conduct or sexual contact. R.C. 2907.01(C). In the present matter, there was evidence of sexual conduct, which includes fellatio, with L.F. R.C. 2907.01(A). Courts have defined "fellatio" as "[a] sexual act in which the mouth or lips come into contact with the penis." (Citation omitted.) *State v. Hall*, 2026-Ohio-1042, ¶ 85 (8th Dist.). N.W.'s testimony established that Ferguson's penis was in L.F.'s mouth.

Case No. 2025-P-0056

**Evidence of Sexual Arousal**

{¶29} Ferguson also argues that the State failed to establish the element of sexual arousal or stimulation in relation to Gross Sexual Imposition and Rape.

{¶30} In relation to the act of fellatio which occurred in the Rape conviction, the Ohio Supreme Court has indicated that it is "the practice of obtaining sexual satisfaction by oral stimulation of the penis" and that "mere penetration of the oral cavity is not sufficient to complete the offense, unlike vaginal or anal intercourse." (Citation omitted.) *In re M.D.*, 38 Ohio St.3d 149, 152 (1988).

{¶31} Further, in relation to GSI, sexual contact must occur, which requires the defendant's act be for the purpose of sexual arousal or gratification. R.C. 2907.01(B). Thus, "the state is obligated to prove beyond a reasonable doubt that the defendant's purpose or specific intention in touching the victim on the proscribed areas of the body . . . was sexual arousal or gratification of either the perpetrator or the victim." (Citation omitted.) *State v. Mugrage*, 2021-Ohio-4136, ¶ 122 (11th Dist.).

{¶32} For the purposes of GSI, it has been held that the State is "not required to present direct evidence proving the element of sexual arousal or gratification." *State v. Solomon*, 2021-Ohio-940, ¶ 48 (8th Dist.). Instead, the trier of fact "may infer a purpose of sexual arousal or gratification from the type, nature and circumstances of the contact, along with the personality of the defendant." (Citation omitted.) *State v. Mack*, 2023-Ohio-4374, ¶ 62 (11th Dist.).

{¶33} We find that there was sufficient evidence to establish sexual gratification from the "tickling" of N.W. Ferguson touched N.W. in multiple erogenous zones, she asked him to stop, and he ultimately stopped because his wife yelled at him. These circumstances tend to indicate he was acting inappropriately. Significantly, N.W. testified

Case No. 2025-P-0056

that she believed Ferguson was doing this for his own pleasure or sexual gratification. When coupled with his conduct on the following day involving L.F., it tends to demonstrate this was not a series of accidents or experiences unmotivated by sexual desires. *See Matter of J.C.*, 2026-Ohio-818, ¶ 22 (7th Dist.) ("[t]here is no evidence to establish that Appellant's conduct was accidental, inadvertent, or involuntary"); *In re Whitlock*, 2008-Ohio-4672, ¶ 24 (11th Dist.) (sexual incidents occurring more than once indicate they were purposeful).

{¶34} Further, it has been held that "[a] sexual purpose can be inferred from the nature of the act itself if a reasonable person would find that act sexually stimulating to . . . the offender or the victim." (Citation omitted.) *State v. Ruschak*, 2025-Ohio-2303, ¶ 14 (11th Dist.). Touching an individual in multiple erogenous zones tends to demonstrate sexual purpose in addition to the foregoing facts.

{¶35} In relation to the GSI count with L.F. as the victim, again sexual purpose can be found from the totality of the circumstances. It can be inferred that sexual gratification is sought from placing a penis in the mouth of another, however disturbing this act was in this case. It can also be inferred that he was seeking sexual arousal and his conduct was not accidental from the testimony that he was pushing L.F.'s head down onto his penis and was holding his penis straight while putting it in her mouth.

{¶36} As to Rape, Ferguson argues that placing his penis in L.F.'s mouth did not complete the offense of Rape since "obtaining sexual satisfaction" is required. However, as noted above, the circumstances surrounding his actions tend to show he sought sexual arousal. Further, it has been held that "[b]ecause acts of sexual conduct are explicitly sexual in nature, 'the definitions of sexual conduct in R.C. 2907.01(A) necessarily imply that the actor's motive is sexual gratification, and so no further proof of sexual gratification

Case No. 2025-P-0056

is required when sexual conduct is proved.'" *In re L.F.*, 2012-Ohio-302, ¶ 12-13 (9th Dist.) ("[t]he victims' statements about L.F. performing fellatio on J.F. created an inference that he committed that act for the purpose of his own sexual arousal or gratification"); *State v. Gillingham*, 2006-Ohio-5758, ¶ 31 (2d Dist.).

**Testimony Alone Establishes Sexual Conduct**

{¶37}  Regarding the weight of the evidence, Ferguson first places significant emphasis on the lack of physical evidence, such as injuries to L.F. or DNA.  "[T]he lack of physical evidence does not preclude a conviction where there is testimony demonstrating sexual conduct" since the state can prove sexual conduct "through either physical evidence and/or witness testimony."  *State v. Abdullah*, 2022-Ohio-3977, ¶ 32 (11th Dist.); *State v. Henderson*, 2002-Ohio-6715, ¶ 36 (11th Dist.).  Further, the lack of physical evidence was explained through the circumstances of this case.  There was testimony the DNA may have been rendered ineffective due to Ferguson urinating before it was collected as well as L.F. vomiting before the rape kit was completed.  Given the nature of the sexual contact and conduct, it is not unreasonable that neither L.F. nor N.W. would have suffered physical injuries.  *See Abdullah* at ¶ 32 ("[i]t is not unexpected that there would be no sign of physical injury since the victim did not testify as to any injury that occurred from the sexual conduct").

{¶38}  While the assault of L.F. was primarily established through the testimony of N.W., we observe that "Ohio courts have held that the testimony of one witness, if believed by the [finder of fact], is enough to support a conviction" under a manifest weight of the evidence review.  *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.); *State v. Waskelis*, 2012-Ohio-3030, ¶ 46 (11th Dist.), citing *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.) ("no physical evidence is required to corroborate a victim's testimony in a rape case,

Case No. 2025-P-0056

and the sole testimony of the victim can support a conviction").

{¶39} Ferguson also argues that some of N.W.'s statements regarding Ferguson's "weird" conduct preceding the assault of L.F., such as Ferguson requesting to have sex with his brother and masturbating in his niece's room, were not based on her own observations as she was not present during these incidents and could not accurately recall the details. However, these instances did not form the basis for the Rape, Sexual Battery, and Gross Sexual Imposition charges. N.W.'s testimony as to these instances, even if it were somewhat unclear or inconsistent, was not directly relevant to the sexual assault crimes. N.W. provided unequivocal testimony that she observed Ferguson's penis in L.F.'s mouth and that she witnessed him push L.F.'s head down on his penis. She provided similarly clear testimony regarding Ferguson touching her. There is nothing in the record to prove N.W. provided false testimony as Ferguson contends. Further, the trial court was in the best position to determine from its observation of N.W.'s demeanor whether her testimony was credible. "[T]he trier of fact is free to believe or disbelieve all or any of the testimony" and "is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible." (Citations omitted.) *State v. Bailey*, 2026-Ohio-1112, ¶ 65 (11th Dist.). "Consequently, although an appellate court must act as a 'thirteenth juror' when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility." (Citation omitted.) *Id.*

{¶40} While N.W. initially denied being touched inappropriately when talking with Officer Douds, she subsequently indicated that Ferguson did sexually assault her. Again, it was up to the trier of fact to decide whether her subsequent statements were truthful.

Case No. 2025-P-0056

{¶41} It is also noteworthy that some other evidence corroborated, to varying degrees, N.W.'s testimony. The fact that a domestic violence incident occurred with both Ferguson's wife and brother immediately after the alleged Rape tends to buttress N.W.'s testimony. Further, although not the strongest admissions, Ferguson made at least some statements conceding that inappropriate conduct with L.F. occurred, stating L.F. "might have latched on for a second" and that it was a "possibility" she did so.

{¶42} Finally, under the first assignment of error, Ferguson states that several hearsay objections to statements made by Morgan to other individuals were overruled. He contends "it was plain error not to renew the hearsay objection for every witness." However, Ferguson has not assigned any errors relating to effective assistance of counsel nor presented any legal argument in favor of a conclusion that these hearsay objections should have been sustained. The burden is on the appellant to provide an "argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." *Lavean*, 2021-Ohio-1456, at ¶ 40 (11th Dist.), citing App.R. 16(A)(7). Nonetheless, these statements appear to have limited impact on the outcome of the trial, particularly given the trial court's comments that it "was on the fence until [it] heard [N.W.] testify."

{¶43} The first and second assignments of error are without merit.

{¶44} In his third assignment of error, Ferguson argues that the court's imposition of life without parole for rape was unsupported by the record.

**Review of Sentence for Rape Under R.C. 2907.02(B)**

{¶45} "The court hearing an appeal [of a felony sentence] shall review the record, including the findings underlying the sentence or modification given by the sentencing

Case No. 2025-P-0056

court."  R.C. 2953.08(G)(2).  "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing . . . if it clearly and convincingly finds . . . [t]hat the sentence is . . . contrary to law."  R.C. 2953.08(G)(2) (b); *State v. Marcum*, 2016-Ohio-1002, ¶ 1.  "[A] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12."  (Citations omitted.)  *State v. Lucas*, 2026-Ohio-230, ¶ 15 (11th Dist.).

{¶46}  Pursuant to R.C. 2907.02(B), "if the victim under division (A)(1)(b) of this section is less than ten years of age, in lieu of sentencing the offender to a prison term or term of life imprisonment pursuant to section 2971.03 of the Revised Code, except as otherwise provided in this division, the court may impose upon the offender a term of life without parole."  R.C. 2971.03(B)(1)(b) provides that "if a person is convicted of or pleads guilty to a violation of division (A)(1)(b) of section 2907.02 of the Revised Code . . . and if the court does not impose a sentence of life without parole when authorized pursuant to division (B) of section 2907.02 of the Revised Code, the court shall impose upon the person an indefinite prison term consisting of . . .[,] [i]f the victim was less than ten years of age, a minimum term of fifteen years and a maximum of life imprisonment."

{¶47}  This court has observed that, pursuant to statute, when the victim in a rape case is under the age of ten, the trial court is authorized to impose a prison term of life without parole.  Thus, its choice to impose such a sentence is "not contrary to law."  *State v. Clark*, 2024-Ohio-4976, ¶ 49 (11th Dist.).  *See also State v. Luzar*, 2026-Ohio-1608, ¶

Case No. 2025-P-0056

8 (11th Dist.) (a sentence of life without parole is lawfully imposed for rape of a child under the age of ten).

{¶48} Ferguson contends that the court's decision to order life without parole was "unsupported by the record" noting that the crime was committed while under the influence of drugs and that the high risk of recidivism referenced in the PSI does not guarantee he would reoffend. Ferguson does not cite authority for the proposition that the court is required to make certain findings to support a sentence of life without parole versus a sentence of fifteen years to life.

{¶49} It has been held that an appellate court is not permitted to substitute its judgment for the trial court's sentencing determination and consideration of the sentencing factors when imposing life without parole for a Rape conviction. *State v. Cook*, 2024-Ohio-2798, ¶ 38 (4th Dist.). As this court has explained, "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12[,]" and an appellate court cannot vacate a sentence "based on its view that the sentence is not supported by the record[.]" *State v. Tyes*, 2026-Ohio-973, ¶ 15 (11th Dist.), citing *State v. Jones*, 2020-Ohio-6729, at ¶ 39 and 42; *State v. Reed*, 2023-Ohio-1324, ¶ 13 (11th Dist.) (we "cannot review alleged error under R.C. 2929.11 and R.C. 2929.12 to evaluate whether the sentencing court's findings for those sentences are unsupported by the record"). The trial court had before it a PSI showing Ferguson's criminal record, a conclusion from his psychological assessment that he was at a high risk of recidivism, and was familiar with the facts of the case given its role as the trier of fact. We will not second-guess its sentencing determination.

Case No. 2025-P-0056

{¶50} Ferguson also notes the court's statements that it was "on the fence" regarding guilt until N.W. testified. Whether the conviction was supported by the evidence is addressed above and we disagree that the convictions were unsupported by the evidence. Further, the court's indication that the testimony of the direct eyewitness to the crime had a significant impact on its finding of guilt plays no role in mitigating Ferguson's sentence; it is not surprising that N.W.'s testimony played a critical role in the determination of guilt in this case.

{¶51} The third assignment of error is without merit.

{¶52} For the foregoing reasons, Ferguson's convictions and sentence in the Portage County Court of Common Pleas are affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2025-P-0056

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Portage County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

_____
JUDGE SCOTT LYNCH

_____
JUDGE JOHN J. EKLUND,
concurs

_____
JUDGE ROBERT J. PATTON,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-P-0056